**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : | Case No. 5:05 CV 1973 |
| | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **OPINION & ORDER** |
| FALLS VILLAGE RETIREMENT COMMUNITY, LTD, et al., | : | |
| | : | |
| Defendants. | : | |

Before the Court is a *Motion of Defendants Northfield Village Retirement Community, LTD and Andover Village Retirement Community, LTD. for Summary Judgment* (Doc. 18), in which two of the three defendants named in this lawsuit seek summary judgment on the claim asserted against them by Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Plaintiff"). In this case, Plaintiff alleges violations of Section 703 of Title VII, 42, U.S.C. § 2000e-3 against three retirement homes for retaliating against an employee because she participated in an EEOC investigation. Plaintiff has filed a brief in opposition (Doc. 23), and Defendant has filed a brief in reply (Doc. 25).[1] Accordingly, this matter is ripe for adjudication. For the reasons articulated below, the Court **GRANTS** Defendants' Motion for Summary Judgment.

---

[1] After Defendant filed its reply brief, Plaintiff moved the Court to allow Plaintiff to file a sur-reply. The Court granted Plaintiff's request to file a sur-reply, limited to certain topics, and permitted Defendants to file a response to Plaintiff's sur-reply (Doc. 31).

**I.     BACKGROUND**

    **A.     Facts**

Defendants are three nursing homes, namely: Falls Village Retirement Community, LTD. ("Falls Village"), Northfield Village Retirement Community, LTD. ("Northfield Village"), and Andover Village Retirement Community, LTD. ("Andover Village").  Each retirement community is a separate Ohio limited liability company, but all three entities are managed by Village Retirement Community ("VRC"), a management company.

The structure and heirarchy at the Defendant nursing homes is as follows.  Each nursing home is supervised by a Nursing Home Administrator, who oversees all department heads at that nursing home.  Each Nursing Home Administrator reports to the Director of Operations, who is an employee of VRC, the management company, and oversees all Nursing Home Administrators.  In turn, the Director of Operations is supervised by the Managing Member of VRC.  At all times relevant to this lawsuit, Michael Francus ("Francus") served as the owner and Managing Member of VRC, as well as the owner of each of the individual facilities.  At all times relevant to this lawsuit, Janice Collins ("Collins") was the Director of Operations who oversaw the Nursing Home Administrators of all three nursing homes, but she also served as the Nursing Home Administrator at Falls Village for a three year period while serving as Director of Operations.

Adrianne Hailey ("Hailey"), the charging party in this case, was hired as Director of Nursing of Falls Village in December 2002.  As Director of Nursing, Hailey reported to the Nursing Home Administrator at Falls Village, who, at that time, was Collins.

In November 2003, Hailey's mother-in-law, Bernadine Dykes ("Dykes"), who worked at Defendant Northfield Village, filed a charge with the EEOC alleging that a racially hostile work

2

environment forced her to resign as a medical records clerk at Northfield Village. In response to Dykes' claim, the EEOC conducted an investigation in which Hailey participated. Several months later, the EEOC sent a pre-determination letter to Northfield Village stating that the EEOC found credible evidence to support a probable cause finding regarding Dykes' charge.

Approximately two weeks after the EEOC sent its pre-determination letter to Northfield Village, Hailey was terminated from Falls Village. Hailey believed she was discharged in retaliation for participating in the EEOC investigation taking place at Northfield Village. Defendant Falls Village argues that Hailey's termination was not retaliatory, but was based on poor job performance.

In April 2004, Hailey filed a charge with the EEOC naming <u>only</u> Falls Village as retaliating against her for participating in the EEOC investigation involving Dykes' allegations. Falls Village responded to the EEOC charge shortly thereafter. In November 2004, the EEOC issued a determination letter against Falls Village for Hailey's charge. The letter was sent <u>only</u> to Falls Village.

### B. Procedural History

The EEOC filed its Complaint on August 11, 2005. Although Hailey had only named Falls Village in her EEOC charge, the EEOC additionally named Northfield Village and Andover Village as defendants in the Complaint. The EEOC did not name VRC as a defendant, however. At the Case Management Conference on March 24, 2006, Defendants Northfield Village and Andover Village indicated that they would file a motion for summary judgment on the issue of whether they could be named as defendants when they were not named in the EEOC charge. Accordingly, the Court limited the first ninety days of discovery in this matter to that issue only.

At a status hearing on July 12, 2006, counsel for the EEOC indicated that she had conducted

3

little, if any, discovery on this issue. Because the ninety day discovery period had already passed, the Court authorized Defendants to file the present motion, which they did on July 20, 2006. The Court now addresses that motion.

## II. ANALYSIS

### A. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp.

1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

**B.     Discussion**

The EEOC seeks to include Northfield Village and Andover Village in this action, though they were not named in the original EEOC charge. In order to bring suit under Title VII, a plaintiff must first file a timely charge with the EEOC against the party to be named as a defendant. 42 U.S.C. § 2000e-5(f)(1) (2000); *Knafel v. Pepsi-Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1480 (6th Cir. 1990); *Romain v. Kurek*, 836 F.2d 241, 244 (6th Cir. 1987). The purpose of the naming requirement is twofold: "to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation." *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977). As to the second purpose, the Sixth Circuit has noted that "[c]onciliation is the primary goal of Title VII and provides an avenue for compliance without resort to the expense and inconvenience of litigation." *Romain*, 836 F.2d at 245.

Courts have, however, recognized that redress of legitimate grievances should not be barred by "undue encumbrance by procedural requirements . . . when demanding full and technical compliance would have no relation to the purposes for requiring the procedures in the first instance." *Glus*, 562 F.2d at 888. Consequently, the Title VII naming requirement has been qualified by two exceptions: (1) an unnamed party may be added if there is a "clear identity of interest between it and a party named in the EEOC charge;" and (2) an unnamed party may be added if that party has unfairly prevented the filing of an EEOC charge. *Romain*, 836 F.2d at 244.

The identity of interest exception alone is relevant here as the EEOC makes no assertions

that Defendants have, in any way, unfairly prevented the filing of an EEOC charge.

### A. Identity of Interest

In determining whether a party shares a clear identity of interest with a named party in an EEOC charge, the Sixth Circuit has adopted two tests.  The first test, originating out of the Seventh Circuit, holds that an identity of interest exists where the unnamed party "has been provided adequate notice of the charge under circumstances which afforded him an opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Baetzel v. Home Instead Senior Care*, 370 F.Supp. 2d 631, 636 (N.D. Ohio 2005)(quoting *Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981)).

The second test, coming out of the Third Circuit, contemplates four factors to determine the existence of an identity of interest between the named and unnamed parties.  Those factors consist of the following:

> (1) [W]hether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> (2) [W]hether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> (3) [W]hether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and
>
> (4) [W]hether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Glus,* 562 F.2d at  888.  The Sixth Circuit has further explained that finding an identity of interest "implies that the named and unnamed parties are virtual alter egos."  *Knafel,* 899 F.2d at 1481.  In addition, consistent with the principle that the procedural requirements of Title VII were not intended to bar legitimate grievances, "the application of the *Eggleston* or *Glus* identity of interest

tests should not frustrate the remedial goals of Title VII by necessitating 'procedural exactness.' *EEOC v. Jeff Wyler Eastgage, Inc.*, 2006 WL 2785774, at * 4 (S.D. Ohio Jan. 9, 2006) (quoting *Glus*, at 245).

Before analyzing the various factors, the Court notes that it is not clear why the EEOC has named Northfield Village and Andover Village as defendants in this matter. Hailey, the charging party, was never employed by either Northfield Village or Andover Village and never received a paycheck from those entities. The Complaint in this case arises solely from Hailey's employment with and termination from Falls Village. Although the EEOC alleges that she was terminated for her involvement in an EEOC investigation at Northfield Village, it does not allege that Northfield Village itself engaged in any illegal conduct <u>in this case</u>.[2] In addition, the EEOC does not argue that, because Northfield Village was the entity involved in the underlying investigation, its claim can only proceed if Northfield Village is a defendant in this case. Although the issue has not been squarely addressed by the Sixth Circuit, it seems clear that Title VII protects an individual from retaliation for participation in any employment discrimination proceeding, even if the proceeding involved a charge against a third-party employer (such as Northfield Village). *See* EEOC Compliance Manual § 8-II(C)(4) ("An individual is protected against retaliation for participation in employment discrimination proceedings even if those proceedings involved a different entity"); *McMenemy v. City of Rochester*, 241 F.3d 279, 283-84 (2d Cir. 2001) (citing the preceding language from the EEOC compliance manual, finding that the EEOC's interpretation is both "entitled to respect" and persuasive, and noting that "we have permitted a retaliation claim where the entity committing the

---

[2] That is not to say that evidence of any unlawful activities occurring at Northfield Village or Andover Village would not be relevant to this lawsuit; those activities just do not form the basis of the Complaint in this case.

retaliation was different from the entity about whose employment practices the plaintiff had complained"); *Flowers v. Columbia College Chicago*, 397 F.3d 532, 533 (7th Cir. 2005) (dicta); *Christopher v. Stouder Mem. Hosp.*, 936 F.2d 870, 873-74 (6th Cir. 1991) (reporting trial court's finding that defendant's frequent reference to plaintiff's sex discrimination action against prior employer warranted inference that defendant's refusal to hire was retaliatory).[3]

In addition, as discussed below in connection with the "single integrated enterprise" doctrine, this is not a situation in which Title VII's fifteen employee requirement is implicated - there is no dispute that Falls Village, by itself, meets Title VII's statutory minimum employee requirement. Finally, this is also not the typical situation in which a plaintiff is attempting to pierce the corporate veil to hold a parent company liable; indeed, as noted above, the EEOC does not attempt to sue VRC, the management company that manages all three nursing homes. These defendants are horizontally-related organizations. With that in mind, the Court applies the relevant tests.

In applying the identity of interest tests to the facts of this case, the Court concludes that, while the factors are fairly evenly balanced, the EEOC has failed to establish a clear identity of interest between the unnamed parties – Northfield Village and Andover Village – and the named party – Falls Village. With regard to the *Eggleston* identity of interest test, the EEOC argues that Northfield Village and Andover Village had adequate notice of the charge because Francus, the

---

[3] The Second Circuit in *McMenemy*, moreover, found that "[a]llowing retaliation claims like McMenemy's is especially appropriate where, as here, the two employers have a relationship that may give one of them an incentive to retaliate for an employee's protected activities against the other." 241 F.3d at 284-85. That is precisely the situation in this case - i.e., that, given the relationship between Falls Village and Northfield Village, although not giving rise to a finding that they have an identity of interest or that they are a "single employer," there is reason to think that Falls Village would have an incentive to retaliate against Hailey for her participation in a proceeding against Northfield Village.

8

Managing Member of VRC and owner of all three nursing homes, must have been aware of the charge. Although it is likely true that Defendants had notice because they were managed by the same individual, nothing about the EEOC investigation, nor Defendants' relationship with each other, would indicate that Northfield Village or Andover Village should be implicated in the present matter so as to cause them to believe they should participate in conciliatory proceedings. Under the *Eggelston* test, notice of the charge must occur "under circumstances which afforded [the party] an opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Eggleston*, 657 F.2d at 895. In this case, the EEOC charge did not allege any wrongdoing on the part of Northfield Village or Andover Village. At most, the EEOC asserts that the decision makers at Falls Village and VRC who terminated Hailey had a motive to do so because of their simultaneous management functions in relation to Northfield Village. While that fact may be relevant to Hailey's claim against Falls Village, it would not provide Northfield Village, or, especially, Andover Village, with a reason to participate in the conciliation proceedings. Application of the *Eggelston* test, therefore, does not permit Plaintiff to proceed against Northfield Village and Andover Village when they were not named in the EEOC charge.

With regard to the *Glus* test, while it is a closer decision, the balance of factors also weigh against circumventing Title VII's naming requirement. It is undisputed that Defendants, although separate legal entities, share a relationship. All are managed by VRC. Hailey, the charging party, was familiar with Defendants' structure. Indeed, Hailey had asked Collins, who was serving as both the Nursing Home Administrator at Falls Village and the Director of Operations for VRC at the

9

time, to investigate a complaint of racial discrimination by an employee at Northfield Village.[4] Such a request indicates that Hailey was familiar with the relatedness of the Defendants when she filed her EEOC charge, and that she could have, with reasonable effort, ascertained their roles at the time she filed the EEOC complaint against Falls Village.

As to the second factor, it is a closer decision whether the interests of Northfield Village and Andover Village were so aligned with Falls Village that it would be unnecessary to include them in the EEOC proceedings. On the one hand, all three homes have an interest in avoiding litigation of this nature as it brings negative attention, particularly in this case because the underlying EEOC investigation in which Hailey participated occurred at Northfield Village. In addition, the EEOC points out in its sur-reply that VRC is "reimbursed from each of the named Defendants based on what the home office (Village Retirement Communities) costs to run each month, divided by each of the nursing home's 'share of patient days' for the month." (Sur-reply at p. 2.) It is unclear whether legal expenses that are incurred from this type of litigation are included in the "costs to run [VRC] each month," but, if they are, then all three Defendants would seem to have the same financial interest in avoiding the cost of litigation.

On the other hand, the EEOC does not dispute that each nursing home has its own separate bank account, that funds are not shared between the homes, and that each entity was operated by different staffs, including heads of departments and Nursing Home Administrators. In addition, for purposes of obtaining voluntary compliance, it would seem at least beneficial, if not necessary, to

---

[4] This particular complaint at Northfield Village was by Candice Corea, a receptionist at Northfield Village, who complained of racially offensive language used by the administrator at that facility. According to the EEOC, Corea was terminated eleven days after Hailey asked Collins to look into the complaint by Corea.

10

include Northfield Village and Andover Village in the conciliation proceedings. For example, Andover Village was the only facility of the three that had union representation, and, consequently, the only one that had two employee handbooks. Those types of differences between the facilities indicate that the participation and voluntary compliance by one facility would not necessarily correlate with the voluntary compliance by the others. Considering both sides, the Court concludes that this factor does not weigh in favor of either party.

Continuing under *Glus*, the fact that Francus was the managing member of VRC and oversaw operations at Northfield Village and Andover Village does not necessarily establish a finding that those nursing homes were not prejudiced by not being named in the EEOC complaint. Francus was given notice that Falls Village, alone, was being investigated by the EEOC. There were reasonable opportunities to include Northfield Village and Andover Village in the EEOC conciliatory proceedings early in the process and to allow managing staff from Northfield Village and Andover Village – aside from management from VRC – to participate in conciliatory proceedings. This failure to invite managing staff from Northfield Village and Andover Village to participate alongside Francus in conciliatory proceedings, especially when it would have been reasonable to do so early on, may have been prejudicial to those unnamed parties.

Lastly, Plaintiff does not argue, and there is no indication otherwise, that either Northfield Village or Andover Village represented to Hailey that any relationship between them would be through Falls Village.

Taken it total, the facts do not support a conclusion that Northfield Village and Andover Village were alter egos of Falls Village. *See Knafel*, 899 F.2d at 1481. They were, in fact, separate legal entities operating independently in three different cities with three different staffs, including

11

separate supervisory and administrative staff. Their common relationship springs out of their relationship with VRC. The nursing homes' relationship among each other is lateral with no control being exercised by staff at one nursing home upon staff at another facility. Any identity of interest that may exist, might exist between each nursing home and VRC, but VRC has not been named as a defendant. As among the nursing homes horizontally, there is no clear identity of interest.

The Court also notes that its conclusion is neither inconsistent with the purpose of the naming requirement, particularly the purpose of promoting conciliation, nor does it frustrate the remedial goals of Title VII, as the EEOC can still maintain its suit against Falls Village, the only entity that the EEOC alleges engaged in wrongdoing. In any event, as noted below, even if the EEOC had established an identity of interest between the three named defendants, it could not proceed against Northfield Village and Andover Village because those entities are not the "employer" of Hailey for purposes of Title VII.

### 2. Integrated Enterprise

Even if there were some identity of interest between these Defendants, that alone cannot trump the requirements of Title VII. More specifically, to prevail against them on its claims, the EEOC must demonstrate that Northfield Village and Andover Village were Hailey's "employer" as contemplated under Title VII. Courts have recognized several ways to satisfy the definition of employer in situations where, as here, no direct relationship exists. *Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 993 (6th Cir. 1997). First, courts examine the entities to see whether they are so interrelated "that they may be considered a 'single employer' or an 'integrated enterprise.'" *Id.* The second approach considers whether a defendant has retained a degree of control over another company's personnel such that the two companies are effectively operating as "joint employers" of

12

the employee. *Id*. A third method looks to whether the party allegedly committing the prohibited employment action was acting as "the agent of another company." *Id*.

Plaintiff argues that Northfield Village and Andover Village are Hailey's employer under the first theory - i.e., that they function as an integrated enterprise with Falls Village and are, therefore, a single employer for purposes of Title VII liability. *See Armbruster*, 711 F.2d 1332.  In analyzing single employer status, courts examine the following four factors: (1) interrelation of operations; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control. *Id*. at 1337. None of the factors by themselves is dispositive, and it is not necessary that all four be satisfied. *Id*. at 1337-38. However, control over labor relations is a "central concern." *Id*. at 1337.

As an initial matter, perhaps most telling of the weakness in Plaintiff's attempt to include the unnamed Defendants in this suit is the relative dearth of case law to support its position. Plaintiff relies heavily on *Armbruster* to support the use of the integrated enterprise test to circumvent Title VII's naming requirement. But *Armbruster*, and the majority of cases Plaintiff relies on, use the integrated enterprise test to satisfy Title VII's requirement that, to be sued, an employer must have at least fifteen employees. Application of the integrated enterprise test to satisfy the fifteen employee requirement is likely more commonplace because of the principle that "the term 'employer' should be liberally construed to effect the remedial purposes of the anti-discrimination laws." *Regan v. In the Heat of the Nite, Inc.*, 1995 WL 413249, at *3 (S.D. N.Y. July 12, 1995). In those circumstances, application of the integrated enterprise test prevents employers from using legal fictions to avoid Title VII liability. In the present case, as stated above, the EEOC will be able to proceed with this action against Falls Village regardless of whether Northfield Village and

13

Andover Village are also deemed to be integrated as a single operation.  Although other courts have stated that a finding of single-employer status may satisfy the naming requirement,[5] as the EEOC attempts to do here, the EEOC has not produced a single case from the Sixth Circuit supporting the position that an integrated enterprise analysis is appropriate to circumvent Title VII's naming requirement when the parties share some horizontal relationship but are not joint employers.

In any event, in applying the four factors of the single employer analysis, the Court concludes that Northfield Village, Andover Village, and Falls Village should not be treated as an integrated enterprise.  First, the facts do not support a finding that Defendants' operations were interrelated.  Each facility has its own bank accounts; they do not share budgets; the nursing homes are separate buildings located in different cities; and they are operated by different staffs.  Other district courts have found these considerations to be significant.  *See Sheard v. Lockheed Martin Energy Sys.*, 2006 WL 286982, at *3 (E.D. Tenn. Feb. 6, 2006) (finding that Lockheed Martin and Lockheed Martin Energy Research Systems do not have an interrelation of operations because the plaintiff did not show "evidence of shared budgets or integration of daily operations" and because "each facility was located on a separate campus, operated by different staffs, and provided distinct products and services."); *Hunter v. Ark Rests. Corp.*, 3 F.Supp.2d 9, 18 (D.D.C. 1998) (finding no interrelation of operations because there was no suggestion of "shared budgets or the integration of daily operations" and because "the three entities are located in different buildings and are operated by different staffs."). In addition, although Plaintiff has shown that staff from one of the Defendant

---

[5] In addition to establishing a party as an employer under Title VII, some courts have recognized that establishing an integrated enterprise necessarily subsumes an identity of interest. *See Knowlton v. Teltrust Phones*, 189 F.3d 1177 (10th Cir. 1999)(stating that an identity of interest test is unnecessary in a case where the court upheld the jury's finding that the named and unnamed parties constituted a single employer).

nursing homes occasionally may go to a different facility for training purposes, that factor is given varying degrees of weight by different courts. *Compare Hunter*, 3 F.Supp.2d at 18 ("Finally, the occasional interchange of employees is a relatively insubstantial indication of a common relationship") (citations and quotations omitted) *with Regan*, 1995 WL 413249 at *3 (finding it "significant" that "employees of various taverns and restaurants alleged to constitute the common enterprise rotate informally among the different establishments."). As was stated aptly in *Swallows*, "[t]here is simply no evidence of the *type* of interrelation found in cases treating two entities as a single employer." 128 F.3d 990. (emphasis added).[6] Considering the totality of facts, therefore, the Court concludes that Plaintiff has not established Defendants' interrelation of operations.

Second, Plaintiff has failed to sufficiently establish common management. Though Francus acts as the Managing Member and Collins acts as the Director of Operations of VRC and, as such, oversees the functioning of each nursing home, the nursing homes are each run by separate administrators who manage the daily operations of each facility. In *Hunter*, the district court found

---

[6] The *Swallows* Court cited the following cases as evidence of interrelation of operation:

*Armbruster*, 711 F.2d at 1338 (finding interrelation of operations where parent company "handled" subsidiary's accounts receivable and its payroll and cash accounting, provided it with administrative backup, monitored its sales shipments, allowed subsidiary's managerial employees to use its company credit cards, and housed subsidiary's bank accounts at its headquarters); *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933-934 (11th Cir. 1987) (parent and subsidiary companies were marketed as "twins in service," and parent kept subsidiary's books and records, issued its payroll checks and paid its bills); *EEOC v. Dolphin Cruise Line, Inc.* 945 F.Supp. 1550, 1553-54 (S.D.Fla. 1996) (two companies provided exclusive services to each other, were marketed as twin operations, used each other's logo and letterhead interchangeably, issued checks on each other's behalf, and kept business and personnel records at the same office).

*Swallows*, 128 F.3d at 994 (parentheticals in original).

15

that there was no common management between a parent corporation and its subsidiaries even though two of the officers and directors of the parent corporation also served as officers and directors of the two subsidiaries and a regional manager oversaw operations. *Hunter*, 3 F.Supp.2d at 18-19. The court decided that there was no common management primarily because the officers did not control the daily operations of the subsidiaries other than to hire the managers. *Id.* Likewise, the court in *Sheard* found that there was no common management between Lockheed Martin and Lockheed Martin Energy Research Systems (LMER) even though the president of Lockheed Martin was an executive vice president of LMER, they had a common vice president, and another individual sat on the boards of both entities concurrently. *Sheard*, 2006 WL 286982, at *3. The court in that case, like the court in *Hunter*, found that the absence of evidence of control of daily operations precluded a showing of common management. In the present case, although Francus and Collins oversee the nursing homes, their roles in personnel matters relate only to "[k]ey management positions" or "significant personnel issues;" Plaintiff concedes that "garden variety" personnel issues are handled by department heads or the nursing home administrator of the facilities. (Sur-reply at 2-3.) This Court finds the reasoning of the *Hunter* and *Sheard* courts persuasive, and concludes that these are not the type of facts that lead to the conclusion that the three Defendants are under common management.

Third, there is insufficient evidence to establish centralized control of labor relations and personnel. Although the fact that employees occasionally will spend time at another nursing home for training purposes is evidence of centralized control of labor relations, it is also true that employees of one nursing home do not exert any degree of control over employees at another facility. The nursing homes operate independently of each other, and each nursing home is run by

16

its own nursing home administrator. The Sixth Circuit has explained that "the critical question is 'what entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Swallows*, 128 F.3d at 995 (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)). In this case, Francus, in his capacity as Managing Member of VRC, made the decision to terminate Hailey. Again, however, the EEOC does not seek to establish an identity of interest between Falls Village and VRC; it only seeks to equate the three nursing homes. That is just too much of a stretch, however, because the administrators at Northfield Village and Andover Village did not have any decision-making authority over Hailey's employment status or take part in the decision to terminate her. It seems that the EEOC is looking in the wrong direction here when seeking to assess blame for the allegedly improper termination of Hailey. The Court concludes, therefore, that there is insufficient evidence to establish the requisite commonality of control over the labor relations of the three nursing home facilities.

As to the fourth factor, the Sixth Circuit has interpreted this factor as a question of whether either of the entities is a sham or otherwise illegitimate. *Swallows*, 128 F.3d at 995; *EEOC v. Wooster Bruch Co. Employees Relief Ass'n*, 727 F.2d 566, 572 (6th Cir. 1984). Plaintiff has not argued that any of the Defendants are sham corporations, and, therefore, this factor weighs against finding that they are an integrated enterprise.

Based on the foregoing analysis, the Court concludes that Falls Village, Northfield Village, and Andover Village do not share a sufficient identity of interest, nor can they be considered an "integrated enterprise" or a "single employer" for purposes of Title VII. The EEOC, therefore, cannot maintain this action against Northfield Village and Andover Village.

17

### III. CONCLUSION

For the reasons outlined above, Defendants' Motion for Summary Judgment is **GRANTED**. Accordingly, Plaintiff's claims against Northfield Village and Andover Village are **DISMISSED**. In addition, as noted above, Plaintiff's claims against Falls Village may proceed because Title VII's fifteen employee requirement is satisfied and because the EEOC can proceed even though Hailey's protected activity arose out of participation in an investigation involving a non-party entity, Northfield Village.[7]

**IT IS SO ORDERED.**

                                              **s/Kathleen M. O'Malley**
                                              **KATHLEEN McDONALD O'MALLEY**
                                              **UNITED STATES DISTRICT JUDGE**

**Dated: March 7, 2007**

---

[7] If either of these two premises later is determined to be incorrect in this case, such that Plaintiff's claims against Falls Village are barred for either of those reasons, then a primary purpose of Title VII's retaliation provision - "[m]aintaining unfettered access to statutory remedial mechanisms," *Robison v. Shell Oil Co.*, 519 U.S. 337, 246 - will have been thwarted by this decision. In that situation, and <u>only</u> in that situation, the Court would entertain a motion to reconsider this decision.